*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0581**

Todd John Hendrickson, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed December 19, 2016
Reversed
Bjorkman, Judge**

McLeod County District Court
File No. 43-CV-15-1447

James M. Ventura, Wayzata, Minnesota; and

Jesse Oelfke, Carver, Minnesota (for appellant)

Lori Swanson, Attorney General, Cory Beth Monnens, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Bjorkman, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant challenges the district court order sustaining the revocation of his driver's license, arguing the implied-consent advisory he received was inaccurate and violated his right to due process. We agree and reverse.

## FACTS

On August 23, 2015, at approximately 1:30 a.m., Brownton Police Officer Larry Warzecha was driving westbound on Highway 212 when he saw a vehicle cross the centerline, return to its own lane, and then drift into and drive on the shoulder for approximately one-quarter mile. Officer Warzecha initiated a traffic stop and identified appellant Todd Johnson Hendrickson as the driver. Officer Warzecha administered field sobriety tests, which Hendrickson failed. After a preliminary breath test indicated an alcohol concentration of 0.00, Officer Warzecha began to suspect Hendrickson was under the influence of a controlled substance. Another officer administered a Romberg test, which indicates impairment resulting from a controlled substance. Based on his observations and Hendrickson's performance on the Romberg test, the other officer also believed Hendrickson was under the influence of a controlled substance.

Officer Warzecha arrested Hendrickson for driving while impaired (DWI) and transported him to the McLeod County Jail. Officer Warzecha read the implied-consent advisory, which informed Hendrickson, among other things, that refusal to submit to a test is a crime. Hendrickson indicated he understood the advisory, declined the opportunity to contact an attorney, and refused to take both blood and urine tests.[1]

Respondent Commissioner of Public Safety subsequently revoked Hendrickson's driver's license. Hendrickson petitioned for judicial review of the revocation, arguing the implied-consent advisory violated his due-process right because it materially misstated

---

[1] Officer Warzecha did not request a breath test because it would not reveal the presence of a controlled substance.

the law. The district court denied the petition, sustaining the license revocation. Hendrickson appeals.

## D E C I S I O N

Minnesota's implied-consent law provides that any person who drives a motor vehicle in the state "consents . . . to a chemical test of that person's blood, breath, or urine for the purpose of determining the presence of alcohol, a controlled substance or its metabolite, or a hazardous substance" when certain conditions are met. Minn. Stat. § 169A.51, subd. 1(a) (2014). A test is required when a person has been lawfully arrested for DWI. *Id.,* subd. 1(b) (2014). When a test is requested, the person must be told that "refusal to take a test is a crime" and that he has a limited right to consult with an attorney. *Id.*, subd. 2(a)(2), (4) (2014). If the person refuses to permit a test, no test may be given. Minn. Stat. § 169A.52, subd. 1 (2014). But if the person refuses to submit to a test, the commissioner must revoke the person's license to drive. *Id.*, subd. 3 (2014).

While this appeal was pending, the United States Supreme Court held that the search-incident-to-arrest exception does not authorize law enforcement to take a warrantless blood sample from a suspected impaired driver. *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2185 (2016). Following *Birchfield*, our supreme court likewise determined that the search-incident-to-arrest exception does not authorize blood or urine tests when an individual is arrested on suspicion of driving while impaired. *See State v. Trahan*, 886 N.W.2d 216, 221 (Minn. 2016) (determining the exception does not authorize blood tests); *State v. Thompson*, 886 N.W.2d 224, 232 (Minn. 2016). Hendrickson contends that the implied-consent advisory he received violated his right to

3

due process because it informed him that refusal to take a blood or urine test is a crime when a criminal test-refusal charge would be unconstitutional.

The United States and Minnesota Constitutions guarantee that no individual shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7; *see also Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448, 453 (Minn. 1988) (stating that due-process protection is "identical" under both constitutions). "Whether an implied-consent advisory violates a driver's due-process rights is a question of law, which this court reviews de novo." *Magnuson v. Comm'r of Pub. Safety*, 703 N.W.2d 557, 561 (Minn. App. 2005).

Hendrickson argues that the implied-consent advisory violated his due-process rights by inaccurately advising him that test refusal was a crime. He relies on *McDonnell v. Comm'r of Pub. Safety* to support his argument. 473 N.W.2d 848 (Minn. 1991). In *McDonnell*, an officer gave an implied-consent advisory that informed the driver she might be subject to criminal prosecution if she refused to take a breath test. *Id.* at 851. But because the driver did not have a prior license revocation, she could not actually be prosecuted for refusing to submit to a breath test. *Id.* The supreme court determined that by threatening criminal charges the state was not authorized to impose, the implied-consent advisory violated the driver's due-process rights. *Id.* at 855. The commissioner argues that this case is distinguishable because, unlike the advisory given in *McDonnell*, the advisory given to Hendrickson was accurate at the time it was read because *Birchfield*, *Trahan*, and *Thompson* had not been decided. We are not persuaded.

4

This court rejected this precise argument in *Johnson v. Comm'r of Pub. Safety*. ___ N.W.2d ___, ___, 2016 WL 6570284, at \*10-11 (Minn. Nov. 7, 2016). Johnson was arrested on suspicion of driving while under the influence of a controlled substance. *Id.* at \*1. After being read the implied-consent advisory, Johnson refused to submit to both blood and urine tests. *Id.* As here, the commissioner argued that because the advisory was given before *Thompson* was decided, the advisory was accurate at the time and not misleading. *Id.* at \*10. We disagreed, and ultimately determined that the advisory violated Johnson's due-process rights. *Id.* at \*10-11. We determined:

> The circumstances of this case fall squarely within *Thompson's* holding, and the refusal statute is therefore unconstitutional as applied to [the driver]. Because a criminal test-refusal charge would be unconstitutional, the implied-consent advisory inaccurately informed [the driver] that refusal to take a urine test is a crime. When the state provided that inaccurate advisory, it misinformed [the driver] regarding the penalties he would face if he refused to submit to testing, in violation of his right to due process, as established in *McDonnell*.

*Id.* at \*12.

Applying *Johnson*, we conclude that the implied-consent advisory Hendrickson received violated his due-process rights. The advisory informed him that refusal to take a blood or urine test is a crime. Because criminal charges based on refusal to submit to a blood or urine test would be unconstitutional under *Birchfield*, *Trahan*, and *Thompson*, the advisory was inaccurate and improperly misinformed him of the penalties he would face if he refused to submit to testing, in violation of his due-process rights. The proper remedy for this violation is rescission of the license revocation. *Id.* Accordingly, the

district court's order sustaining the revocation of Hendrickson's driver's license must be reversed.

**Reversed.**